UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| GREGORY HEDGES, | ) | |
| Petitioner, | ) ) ) | Civil Action No. 5: 22-294-DCR |
| v. | ) ) | |
| UNITED STATES MARSHALS SERVICE, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Respondent. | ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Petitioner Gregory Hedges is currently confined at the Bourbon County Detention Center in Paris, Kentucky. Proceeding without an attorney, Hedges has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the computation of his sentence by the Bureau of Prisons ("BOP"). [Record No. 1] The matter is pending for initial screening as required by 28 U.S.C. § 2243. *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).[1]

In October 2015, and pursuant to a plea agreement with the United States, Hedges pled guilty in the United States District Court for the Eastern District of Kentucky to one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349. In June 2016, he was sentenced to a term of imprisonment of 48 months, to be followed by a 3-year term of supervised release. *United States v. Hedges*, No. 3: 15-cr-3-GFVT-1 (E.D. Ky. 2022).

---

[1] A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

-1-

Hedges' term of supervision began on April 17, 2020. But since that time, his supervised release has been revoked four times for various violations. *See id*. at Record No. 475.[2] *See also id*. at Record No. 386, 412, 439, 479. Most recently, on October 18, 2022, a judgment was entered revoking Hedges' supervised release and sentencing him to a term of imprisonment of 8 months with no term of supervision to follow. *Id*. at Record No. 479.

Notwithstanding this recent imposition of an 8-month sentence, Hedges argues in his current petition that he is entitled to immediate release from custody. He contends that, while he was serving his initial sentence, he was admitted in January 2018 to a Residential Drug Abuse Program ("RDAP"). [Record No. 1 at p. 5] On October 29, 2019, Hedges was released to a Residential Re-entry Center ("RRC"), where he participated in a Transitional Drug Abuse Treatment program ("TDAT"). [*Id*. at p. 6] According to Hedges, his completion of the substance abuse treatment programs qualified him for early release under to 18 U.S.C. § 3621(e). Thus, he claims that the BOP applied a one-year reduction to his 48-month sentence and released him to begin his 3-year term of supervised release in April 2020.[3]

However, in addition to this early release from custody on his initial sentence, Hedges now claims that he is also entitled to *additional* Earned Time Credits ("ETC") that he believes that he should have earned while he was serving his initial sentence pursuant to the First Step

---

[2] Hedges' "tumultuous" supervised release history is set forth more fully by United States Magistrate Judge Matthew A. Stinnett in a September 23, 2022 Report and Recommendation, which was adopted as and for the Opinion of the Court by United States District Court Judge Gregory F. Van Tatenhove on October 14, 2022. *See United States v. Hedges*, No. 3:15-cr-3-GFVT-1 (E.D. Ky. 2022) at Record No. 475, 478.

[3] Section 3621(e)(2) provides incentives to prisoners for the successful completion of substance abuse treatment programs, including a reduction of the prisoners' time in custody. 18 U.S.C. § 3621(e)(2).

Act, Publ. L. No. 115-015, 132 Stat. 015 (2018).  The First Step Act includes a provision directing the Attorney General to develop a new "risk and needs assessment system" (referred to as the "System") to provide appropriate programming for prisoners in an effort to reduce the risk of recidivism and which provides incentives and rewards for prisoners to participate in the "evidence-based recidivism reduction" ("EBRR") programming.  18 U.S.C. § 3632.  These incentives include additional time credits to be applied toward time in prerelease custody or supervised release, thus allowing eligible prisoners to be placed in prerelease custody (i.e., home confinement or an RRC) earlier than allowed previously.  *See* 18 U.S.C. § 3632(d)(4).

Hedges argues that he is entitled to apply ETC that he believes that he should have earned due to his participation in the RDAP from January 2018 and April 2020 towards the sentence that was recently imposed in October 2022 for his latest supervised release violation. [Record No. 1 at p. 5-9]  Although Hedges was released previously from custody on his initial sentence, he relies on *Johnson v. United States*, 529 U.S. 694 (2000), and *United States v. Haymond*, 139 S.Ct. 2369, 2379-80 (2019), in arguing that, because post-revocation penalties relate to the original offense, his "unused" ETC "did not expire administratively" when the BOP released him from custody in April 2020 to begin his 3-year term of supervised release. [Record No. 1 at p. 9]  Thus, Hedges claims that at least 160 (but perhaps as many as 250) days of "unused" ETC that he should have earned under the First Step Act based on his prior completion of the RDAP should carry forward and apply to his current sentence, thus entitling him to immediate release from custody.

The relief sought through Hedges § 2241 petition will be denied for several reasons. First, Hedges fails to provide the Court with any information regarding the basis for his current sentence computation, instead claiming that he is unable to obtain a Sentence Monitoring

Computation Data Sheet because he is not in BOP custody. But even if he is not in BOP custody, Hedges may still request information regarding his sentence computation from the BOP's Designation and Sentence Computation Center ("DSCC"). And it is the *petitioner's burden* to demonstrate that he is entitled to habeas relief. Here, Hedges has failed to provide the Court with any information regarding the BOP's computation of Hedges' sentence.

Nor has Hedges pursued any administrative review of the computation of his sentence. If a prisoner believes that his sentence is improperly computed because he has been unfairly denied credit toward the sentence imposed, he must pursue administrative review of that computation with the BOP prior to seeking habeas relief under § 2241. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006). *See also Luedtke v. Berkebile*, 704 F. 3d 465, 466 (6th Cir. 2013); *Leslie v. United States*, 89 Fed. Appx. 960, 961 (6th Cir. 2004) ("[I]t is well established that federal prisoners are required to exhaust their administrative remedies before filing a habeas corpus petition under § 2241.").[4] Exhaustion of administrative remedies serves two main purposes: 1) it "protects administrative agency authority," by ensuring that an agency has an opportunity to review and revise its actions before litigation is commenced, which preserves both judicial resources and administrative

---

[4] Administrative remedies must be exhausted prior to filing suit and in full conformity with the agency's claims processing rules. *Woodford v. Ngo*, 548 U.S. 81, 92-94 (2006). The BOP's Inmate Grievance System requires a federal prisoner to first seek informal resolution of any issue with staff. 28 C.F.R. § 542.13. If a matter cannot be resolved informally, the prisoner must file an Administrative Remedy Request Form (BP-9 Form) with the Warden, who has 20 days to respond. *See* 28 C.F.R. §§ 542.14(a) and 542.18. If the prisoner is not satisfied with the Warden's response, he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. If the prisoner is not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General Counsel, who has 40 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. *See also* BOP Program Statement 1330.18 (Jan. 6, 2014).

autonomy; and 2) it promotes efficiency because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Woodford*, 548 U.S. at 89 (citations omitted). *See also Detroit Newspaper Agency v. N.L.R.B.*, 286 F.3d 391, 396 (6th Cir. 2002) ("The purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence, to make a factual record, to apply its expertise and to correct its own errors so as to moot judicial controversies.") (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1092 (6th Cir. 1981) (other citations omitted)). Both of these purposes would be well-served here, particularly in light of the lack of any information regarding the BOP's computation of Hedges' sentence.

While Hedges argues that administrative remedies are unavailable because he is not currently in BOP custody [Record No. 1 at p. 11-12], the BOP's Administrative Remedy Program applies "to former inmates for issues that arose during their confinement," such as Hedges' claim that he is entitled to ETC allegedly earned while he was previously in BOP custody. *See* 28 C.F.R. § 542.10. Moreover, an exception to the requirement that a grievance must initially be filed at the institution exists that allows "formal administrative remedy requests regarding initial decisions that did not originate with the Warden, or his/her staff, [to be] initially filed with the Bureau office which made the original decision, and appealed directly to the General Counsel." *See* 28 C.F.R. § 542.14(d)(5). In this case, Hedges has not taken any steps to pursue any administrative remedies with respect to the computation of his sentence. Simply put, a prisoner must undertake a meaningful effort to follow the grievance process before the asserted unavailability of the procedure even becomes relevant. *Napier v. Laurel Cnty.*, 636 F.3d 218, 223-24 (6th Cir. 2011).

Finally, Hedges' theory that he is entitled to the application of ETC that he believes he should have earned under 18 U.S.C. § 3632(d)(4) for his participation in EBRR while he was previously in custody is simply wrong. It is true that, for purposes of the right to a trial by jury guaranteed by the Fifth and Sixth Amendments, "supervised release punishments arise from and are 'treat[ed] . . . as part of the penalty for the initial offense.'" *Haymond*, 139 S.Ct. at 2379-80 (2019) (quoting *Johnson*, 529 U.S. at 700).[5] Although supervised release violations "often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. *Johnson*, 529 U.S. at 700.

Hedges is not challenging any findings made by the Court as part of his latest supervised release revocation proceedings, nor is he challenging the validity of the post-revocation sentence that was imposed. Rather, he is challenging the computation of the revocation sentence itself. While "[s]upervised release is imposed as part of the original sentence, . . . the imprisonment that ensues from revocation is partly based on new conduct, is wholly derived from a different source, and has different objectives altogether; it is therefore a different beast." *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005).

Hedge's reliance on *Haymond* and *Johnson* for his theory that he may apply sentencing credit that he allegedly should have earned under the First Step Act while previously in custody to a subsequent revocation sentence has been repeatedly rejected by other Courts which have

---

[5] In *Haymond*, the Supreme Court further explained that, because a defendant's term of supervised release is part of the final sentence for his initial offense, if supervised release is later revoked, "[a]s at the initial sentencing hearing, that does not mean a jury must find every fact in a revocation hearing that may affect the judge's exercise of discretion within the range of punishments authorized by the jury's verdict. But it does mean that a jury must find any facts that trigger a *new* mandatory minimum prison term." *Haymond*, 139 S.Ct. at 2380.

considered the issue. *See Jamison v. Warden, Elkton Fed. Corr. Inst.*, No. 1:19-CV-789, 2019 WL 5690710, at *2–3 (S.D. Ohio Nov. 4, 2019), *report and recommendation adopted*, No. 1:19-CV-789, 2019 WL 6828358 (S.D. Ohio Dec. 12, 2019) ("Because petitioner's revocation sentence is separate from his original sentence for purposes of calculating good-time credits, he is not entitled to the good-time credits he would have received on his original 36-month sentence if the First Step Act had been enacted at the time he was serving that sentence.") (collecting cases). *See also Buchanan v. Hemingway*, No. 2: 21-CV-10683, 2022 WL 2119537, at *3 (E.D. Mich. June 13, 2022), *reconsideration denied*, 2022 WL 2812654 (E.D. Mich. July 18, 2022) (petitioner's suggestion that "he should be awarded good conduct time credits for all his previously imposed sentences—not just the ones he is currently serving" is "untenable"); *White v. Sproul*, No. 19-CV1291-SPM, 2021 WL 1854642, at *2 (S.D. Ill. May 10, 2021) ("[A]n inmate who is serving a revocation term is only entitled to additional good credit time under the First Step Act on the revocation term and not on the underlying sentence that had already been satisfied.") (citations omitted); *Smith v. Williams*, No. 4: 19-CV-02819, 2020 WL 3453124, at *3 (N.D. Ohio June 8, 2020), *report and recommendation adopted*, No. 4: 19 CV 2819, 2020 WL 3447841 (N.D. Ohio June 24, 2020); *Kieffer v. Rios*, No. 19-CV0899, 2019 WL 3986260, at *1 (D. Minn. Aug. 23, 2019) ("[A] revocation sentence is separate and distinct from the original underlying sentence for purposes of calculating good-conduct time," and an inmate "is eligible to earn additional good-conduct time under the First Step Act only for the...sentence he is currently serving.") (citations omitted).

In summary, Hedges' argument is untenable and he is not entitled to relief. To conclude otherwise would essentially provide Hedges a "get out of jail free" card that would entitle him to cancel out his revocation sentence before it was even imposed.

For all of the foregoing reasons, it is hereby

**ORDERED** as follows:

1. Hedges' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Record No. 1] is **DENIED**.

2. This action is **DISMISSED** and **STRICKEN** from the docket.

Dated:  November 23, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky